United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL CALIFORNIA ELECTRICAL INDUSTRY HEALTH AND WELFARE AND PENSION TRUST FUNDS; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOLETA ELECTRIC, INC.,<br><br>Defendant.<br>_____/ | No. C11-2755 EMC<br><br>**ORDER RE SUPPLEMENTAL BRIEFING AND/OR EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

Plaintiffs' Motion for Default Judgment is currently set for hearing before the Court on January 20, 2012. Docket No. 17. Having reviewed Plaintiffs' brief and accompanying submissions, the Court hereby orders Plaintiffs to provide additional briefing and/or evidence in support of its motion for default judgment to address the concerns detailed below.

A.  Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). According to Federal Rule of Civil Procedure 4(h)(1), a corporation may be served "in the manner prescribed for individuals by subdivision (e)(1)," Fed. R. Civ. P. 4(h)(1), and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1).

Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) to the person designated as agent for service under certain provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. P. § 416.10(a), (b).

In the instant case, service of the summons and complaint appears to have been proper. Plaintiffs filed a proof of service indicating that the summons and complaint had been served on June 23, 2011. *See* Docket No. 6. The Proof of Service indicates that Plaintiffs personally served Bruce Winstrom, the person purportedly authorized to accept service of process for Goleta, pursuant to Code Civ. P. § 416.10. The Court notes that the Letter of Assent from 2000 is signed by Mr. Winstrom as the Owner of Goleta. Accordingly, service of the summons and complaint appears proper.

However, subsequent documents in this action raise concerns over the adequacy of service. For example, while the summons, complaint, and motion for entry of default are listed as having been served on Mr. Winstrom at the address of 6133 Covington Way in Goleta, *see* Docket Nos. 6, 9, Plaintiffs' subsequent motion to continue the case management conference and motion for default judgment list Mr. Winstrom's address as 5970 Hollister Avenue in Goleta. *See* Docket Nos. 14, 17.[1] In addition, Ms. Quail's declaration in support of the motion for default judgment appears to have been served by mail on Nisha Chaudry of Crown Electric, at 85 Columbia Square in San Francisco. *See* Docket No. 19. The Court is unaware of any connection between Ms. Chaudry or Crown Electric and Defendant. Plaintiffs should explain the change in addresses used and provide any evidence supporting the contention that the address used for each document purportedly served on Defendant was valid and current.

B.  *Eitel* Factors

---

[1] The Court notes that the Hollister Avenue address corresponds to the address listed on the Letter of Assent. *See* Compl. Ex. A. However, that document dates back to 2000 and may be outdated.

2

1    In their motion for default judgment, Plaintiffs correctly cite to *Eitel v. McCool*, 782 F.2d
2 1470 (9th Cir. 1986), as laying out the factors to consider on a motion for default judgment.[2]
3 However, Plaintiffs fail to provide any analysis of these factors in the context of the case at bar, and
4 fail to explain why they are entitled to default judgment for their causes of action.  Plaintiffs shall
5 file supplemental briefing explaining why they are entitled to default judgment based on the *Eitel*
6 factors.   In particular, Plaintiffs should provide a complete discussion with respect to *Eitel* factors
7 (2) and (3).  *See Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal.
8 2003) (noting that the second and third *Eitel* factors "'require that a plaintiff state a claim on which
9 the [plaintiff] may recover'") (citation omitted).   The Court notes that, upon entry of default, the
10 factual allegations of the plaintiff's complaint will be taken as true (except for those relating to the
11 amount of damages).  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).
12 However, some of the factual allegations in Plaintiffs' complaint lack specificity.  The Court details
13 some of these areas of concern below, as well as concerns about the damages alleged.  A full
14 discussion of the *Eitel* factors in the context of this ERISA case, including citations to relevant
15 authority, is warranted.

C.    <u>The Letter of Assent and Collective Bargaining Agreement</u>

17    The Complaint states that Defendant has agreed via a letter of assent (attached to the
18 Complaint as Ex. A) to be bound by the collective bargaining agreement (attached to the Complaint
19 as Ex. B, also referred to as the Inside Wireman's Agreement).  Compl. ¶ 8.  However, the Letter of
20 Assent states it applies to any approved "9th District Sound & Communication Southern California
21 Addendum" labor agreement.   Compl. Ex. A.  It is not clear that this letter of assent applies to the
22 collective bargaining agreement attached to the complaint.  Moreover, the Letter of Assent was
23 dated as of May 2000, and the Complaint alleges that Defendant failed to make the contributions
24 required under the collective bargaining agreement from December 2009 to April 2010.  Yet the

---

[2] The *Eitel* factors are: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

3

collective bargaining agreement attached to the Complaint only covers the years 2010-2013. Compl. Ex. B at 1. Plaintiffs have not explained how this agreement covers any delinquent contributions from 2009. Finally, Plaintiffs allege that the collective bargaining agreement requires Defendant to be bound by applicable Trust agreements. *See* Mot. for Default Judgment at 3; Compl. ¶¶ 8-9. However, Plaintiffs do not appear to have provided the Trust agreements to the Court, and §§ 6.01 and 6.02 of the collective bargaining agreement, which deal with the Plaintiff Trust Funds, do not appear to reference any separate Trust agreements to which Defendant agrees to be bound.

Accordingly, Plaintiffs are directed to file supplemental briefing and any and all evidence establishing (1) Defendant's agreement to be bound by the collective bargaining agreement; (2) this (or another) collective bargaining agreement's application to contributions in 2009; and (3) Defendant's agreement to be bound by any Trust agreements. Plaintiffs should also provide any such Trust agreements to the Court.

D. <u>Categories of Payments Due to Plaintiff Trust Funds</u>

The Stephenson Declaration, submitted in support of the default judgment motion, provides a summary of delinquent contributions purportedly owed by Defendant Goleta to Plaintiffs Health & Welfare and Pension Trust Funds ("Trust Funds"). *See* Docket No. 18. Mr. Stephenson's report of contributions owed per month appears to be based on the Journeyman & Apprentice Wireman Monthly Reports for Electrical Contractors attached to the Quail Declaration at Docket No. 19, Ex. C. These monthly reports detail the amounts owed by Goleta per month under various categories of payments.

However, it is not clear whether the figures Mr. Stephenson uses from the monthly reports are correct. For example, at paragraph 3 of Stephenson's declaration, he states that Goleta owes $12,075.58 in delinquent contributions. The corresponding monthly report lists that figure as the "Total Payment Due," which includes not only health & welfare and pension payments due, but also figures such as Union dues, 401k payments, and other categories of payments due.[3] *See* Docket No.

---

[3] The payments described in shorthand on the monthly reports appear to correspond to the fringe benefit payments required in § 3.08 of the collective bargaining agreement. *See* Compl., Ex. B, § 3.08. For example, the monthly reports list "H&W," "Pen. A,"

19, Ex. C, at 1. The monthly report lists only $8,935.20 as due under the category of "H&W/PEN Transfer," which would appear to be the sums due to the Health & Welfare and Pension Trust Funds. *See id.* The Stephenson Declaration repeats this pattern for each month, citing to the "Total Payment Due" rather than the "H&W/PEN Transfer" due for each month.[4]

It is unclear from the face of the complaint and Plaintiffs' accompanying arguments whether all of the payments listed on the monthly reports are (1) covered by the allegations in the Complaint; and (2) due and owing to the Health & Welfare and Pension Trust Funds, rather than to some other fund or entity. For example, the Complaint identifies the Plaintiff Trust Funds as the Health and Welfare and Pension Trust Funds. *See* Docket No. 1 (caption). The Complaint also states that Defendant is bound by the terms of the collective bargaining agreement, which requires, *inter alia*, employer contributions to the Health & Welfare and Pension Trust Funds. Compl., Ex. B, §§ 6.01, 6.02. Further, the Complaint alleges generally that Defendant failed to make "required contributions" to the Trust Funds. Compl. ¶ 10.

However, the Complaint does not allege, nor does the accompanying documentation establish, that the Plaintiff Trust Funds–specifically denominated the Health & Welfare and Pension Trust Funds–are entitled to *all* of the contributions required by the collective bargaining agreement, as opposed to simply the subset of contributions falling under the categories of "Health & Welfare"

---

"Pen. B," "401k," "ETT," "COPE," "Union Dues," "LMCC," and "AMF," as categories of payments owed by the employer. *See* Docket No. 19, Ex. C, at 1. These likely correspond to "Health & Welfare," "Local Pension (Pension A)," "Annuity Fund (Pension B)," "401(k) (Optional)," "Training Trust," "Voluntary COPE Check Off," "Working Dues Assessment," "Labor Management Co-Op," and "Administrative Maintenance Fund," respectively, although Training Trust and Working Dues Assessment titles are less clearly related to "ETT" and "Union Dues" than the other categories. *See* Compl., Ex. B, § 3.08. In addition, the monthly reports list payments of "3% of Total Gross to NEBF" and "1% of Total Gross to NEIF" as additional categories of payments due. These appear to correspond to sections 6.03 and 7.01 of the collective bargaining agreement, respectively, which require transfers of a certain percentage of the monthly payroll to the National Electrical Benefit Fund and the National Electrical Industry Fund. Compl., Ex. B, §§ 6.03, 7.01.

[4] Using the total payments, the delinquent amount would add up to $24,289.04. Using only the health and welfare and pension payments, the delinquent amount would total $17,684.41. These totals do not include applicable interest or liquidated damages.

5

1 and "Pension" as delineated in the collective bargaining agreement and the monthly reports. The
2 health & welfare and pension payments required under §§ 6.01 and 6.02 appear to form merely a
3 subset of the contribution requirements in the collective bargaining agreement. *See, e.g.*, Compl.,
4 Ex. B, § 6.03 (describing payments due to the National Electrical Benefit Fund's "designated local
5 collection agent" and stating that these payments are debts "due and owing to the NEBF" pursuant
6 to the "Restated Employees Benefit Agreement and Trust"); *id.* § 7.01 (describing payments due to
7 the National Electrical Industry Fund (NEIF)). Indeed, the monthly reports appear to separate the
8 amounts owed into categories based on their transfer destination. The bottom of each report sums
9 up the amounts owed to "NEBF Transfer," "H&W/PEN Transfer," and "Transfer Other Funds." *See*
10 Docket No. 19, Ex. C, at 1. This suggests that the various payments described on the monthly
11 reports are not all due to the same entity.

12 Accordingly, Plaintiffs are instructed to file supplemental briefing and provide any and all
13 evidence establishing what specific payments are due and owing to the Plaintiff Trust Funds, as
14 opposed other entities and funds described in the collective bargaining agreement and monthly
15 reports.

16 E. <u>Interest and Liquidated Damages</u>

17 The Stephenson Declaration, submitted in support of the default judgment motion, states that
18 the "Trusts require 10% interest per annum on delinquent contributions" as well as, "if contributions
19 are more than 30 days late, liquidated damages of 10% of the amount which was not paid within the
20 30 day deadline." Docket No. 18 ¶ 2. However, the declaration does not cite to or attach any
21 documentation demonstrating these Trust requirements. While Mr. Stephenson states that he is
22 "employed by United Administrative Services, which assists in the collection and disbursement of
23 funds for" the Plaintiff Trust Funds, he does not explain the nature and scope of his employment, nor
24 does he explain, cite, or attach the source of his knowledge regarding the Trusts' requirements as to
25 any penalties for delinquent contributions. It is also not clear whether and where Defendant agreed
26 to be bound by such requirements. While §§ 6.01 and 6.02 of the collective bargaining agreement
27 state that they establish the Health & Welfare and Pension Trust Funds, those sections do not
28

mention any trust agreements to which Defendant agrees to be bound, nor do they mention interest or liquidated damages. *See* Compl., Ex. B, §§ 6.01, 6.02.

Accordingly, Plaintiffs are directed to file supplemental briefing providing the source of the Trusts' authority to impose such interest and liquidated damages on Defendant.

F. <u>Conclusion</u>

Plaintiffs are directed to file the above-described supplemental briefing along with any and all supporting evidence within two weeks of the date of this order. The hearing on Plaintiff's motion for default judgment is accordingly reset from January 20, 2012, to February 10, 2012, at 1:30 p.m.

Plaintiffs shall serve a copy of this order on Defendant within three days of the filing of this order. Thereafter, Plaintiffs shall file a proof of service with the Court.

IT IS SO ORDERED.

Dated: January 11, 2012

_____
EDWARD M. CHEN
United States District Judge

7