**United States District Court**
For the Northern District of California

1
2
3
4
5                     UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8   CENTRAL CALIFORNIA ELECTRICAL          No. C-11-2755 EMC
    INDUSTRY HEALTH AND WELFARE
9   AND PENSION TRUST FUNDS; *et al.*,
10          Plaintiffs,                     **ORDER GRANTING PLAINTIFFS'**
                                            **MOTION FOR DEFAULT JUDGMENT**
11      v.
                                            **(Docket Nos. 17, 23)**
12  GOLETA ELECTRIC, INC.,
13          Defendant.
14  _____/
15
16          Plaintiffs are the Central California Electrical Industry Health and Welfare and Pension Trust
17  Funds ("Central Cal."), which are multi-employer employee benefit plans authorized to collect
18  unpaid employer contributions.  Compl., Docket No. 1, ¶¶ 3-4, 16.  Plaintiffs filed suit against
19  Defendant Goleta Electric ("Goleta"), a California corporation with suspended corporate and
20  contractor's licenses, pursuant to the Employee Retirement Income Security Act ("ERISA"), *see* 29
21  U.S.C. 1145 and the Labor Management Relations Act ("LRMA"), *see id.* § 185.  After Goleta
22  failed to respond to Plaintiffs' complaint, default was entered on October 7, 2011.  *See* Docket No.
23  13.  Plaintiffs thereafter moved for default judgment.  Motion for Default Judgment, Docket No. 17.
24  Having considered Plaintiffs' briefs and accompanying submissions, as well as all other evidence on
25  record, the Court hereby **GRANTS** the motion for default judgment.
26                  I.   **FACTUAL & PROCEDURAL HISTORY**
27          Plaintiffs filed suit against Goleta on June 6, 2011.  *See* Compl.  In their complaint, Plaintiffs
28  allege that they are employee benefit plans and multiemployer plans within the meaning of the

1    LMRA and ERISA.  *See* Compl. ¶ 3.  In support of their motion for default judgment, Plaintiffs

2    provided the evidence to establish the following.

3           On July 23, 1972, Goleta signed a Letter of Assent, binding Goleta to the terms of Plaintiffs'

4    Collective Bargaining Agreement ("CBA").  Letter of Assent, Docket No. 25 (Ex. A, ¶ 1).  The

5    Letter of Assent indicates it "shall be as binding on the [signatory] firm as though it had signed the

6    [CBA] and any approved amendments thereto" and "shall remain in effect until terminated by

7    written notice to the parties to the aforementioned agreement ninety (90) days prior to the

8    notification date provided for therein."  Letter of Assent, Docket No. 25 (Ex. A, ¶¶ 2-3).  There is no

9    evidence indicating Goleta submitted any written termination of assent.  As a result of signing the

10   Letter of Assent to the CBA, Goleta is also bound by the terms of the Trust Agreement.  Trust

11   Agreement ("TA"), Docket No. 26 (Ex. E, Art. II, §1 at E) ("'Employer' [under the TA] . . . means .

12   . . any independent Employer who is bound by the [CBA] . . . .")

13          Under the terms of the relevant CBAs,[1] "each signatory employer shall contribute the sum as

14   specified in Article III, Section 8 of this Agreement for each hour worked by each employee covered

15   by the terms of this Agreement."  2005-2007 CBA, Docket No. 25 (Ex. B, Art. VI, § 6.01(a)); 2010-

16   2013 CBA, Docket No. 26 (Ex. C, Art. VI, § 6.01(a)).  Similarly, under the parties' TA, "[e]ach

17   [e]mployer shall make such [e]mployer contributions to the Trust Fund as are required by any

18   applicable collective bargaining agreement."  TA, Docket No. 26 (Ex. E, Art. III, § 1).  The TA

19   further provides, in part, "[a]n employer shall be considered delinquent if late payment . . . occurs

20   because it (a) fails to submit a contribution report with the full contribution postmarked by the date;

21   or (b) fails to submit contributions on behalf of all [e]mployees for whom contributions are required

---

23          [1] Plaintiffs filed two separate CBAs for December 2009 through April 2010, the period in
24   contention.  *See* Docket No. 25 (Ex. B); 26 (Ex. C).  The 2005-2007 CBA states: "This [CBA] shall
     take effect June 1, 2005 and shall remain in effect until May 31, 2007 . . . [and] shall continue in
25   effect from year to year thereafter, from June 1 through May 31 of each year, unless changed or
     terminated in the way later provided therein."  2005-2007 CBA, Docket No. 25 (Ex. B, Art. I, §
26   1.01).  The 2010-2013 CBA shares similar language, stating it "shall take effect June 1, 2010" and
     remain effective after such date unless changed or terminated.  2010-2013 CBA, Docket No. 26 (Ex.
27   C, Art. I, § 1.01).  Further, both CBAs state they "shall apply to all firms who sign a letter of assent
     to be bound by the terms of this agreement."  2005-2007 CBA, Docket No. 25 (Ex. B at 1); 2010-
28   2013 CBA, Docket No. 26 (Ex. C at 1).  Therefore, Goleta's Letter of Assent from July 1972 binds it
     to the CBAs.

United States District Court
For the Northern District of California

1  by the collective bargaining agreement . . . ." TA, Docket No. 26 (Ex. E, Art. III, § 4 at ¶ 1). When

2  an employer becomes delinquent, the TA provides for employees to recover liquidated damages,

3  unpaid interest, and attorney's fees in addition to the unpaid principal. TA, Docket No. 26 (Ex. E,

4  Art. III).

5       In their complaint, Plaintiffs allege Goleta failed to make the required contributions between

6  December 2009 through April 2010. Compl. ¶¶ 11-12, 15. On June 23, 2011, Plaintiffs served the

7  summons and complaint on Mr. Bruce Winstrom ("Winstrom"), the person authorized to accept

8  service of process for Goleta. *See* Docket No. 6. Upon Goleta's failure to respond, default was

9  entered on October 7, 2011. Docket No. 13. On December 14, 2011, Plaintiffs filed a motion for

10  default judgment, seeking the following: (1) unpaid contributions of $24,289.04; (2) liquidated

11  damages of $2,428.90; (3) unpaid interest of $4,657.19 plus $6.65 per day after January 20, 2012

12  until judgment is entered; (4) attorney's fees of $2,695.00; and (5) out-of-pocket costs of $520.80.

13  Motion for Default Judgment, Docket No. 17 at 4:3-14.

14                     **II.   DISCUSSION**

15  A.   Adequacy of Service of Process

16       As a preliminary matter, the Court must first "assess the adequacy of the service of process

17  on the party against whom default is requested." *Board of Trs. of the N. Cal. Sheet Metal Workers v.*

18  *Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

19  According to Federal Rule of Civil Procedure 4(h)(1), a corporation may be served "in the manner

20  prescribed for individuals by subdivision (e)(1)," Fed. R. Civ. P. 4(h)(1), and Rule 4(e)(1) in turn

21  allows for service "pursuant to the law of the state in which the district court is located." Fed. R.

22  Civ. P. 4(e)(1).

23       Under California law, a summons and complaint may be served on a corporation by

24  delivering a copy of the documents (1) to the person designated as agent for service under certain

25  provisions of the California Corporations Code or (2) to the "president or other head of the

26  corporation, a vice president, a secretary or assistant secretary, or treasurer or assistant treasurer, a

27  general manager, or a person authorized by the corporation to receive service of process." Cal. Code

28  Civ. P. § 416.10(a), (b).

3

**United States District Court**
For the Northern District of California

A corporation may also be served under California law through "substitute service."  That is,

> [i]n lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. P. § 415.20(a).

A proof of service indicates Plaintiffs personally served Winstrom, the person authorized to accept service of process for Goleta, pursuant to Code Civ. P. § 416.10.  The fact that Goleta is a suspended corporation does not affect the propriety of service of process.  California case law indicates that a party may effect service of process on a suspended corporation may be effectuated under the regular service-of-process statutes.  *See Grell v. Laci Lea Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (1999) ("A suspended corporation may be sued, and service of process upon a suspended corporation is effected in the same manner as service upon a corporation that is not suspended."); *Cf. Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 301-02 (1998) (holding a suspended domestic corporation without a designated agent for service of process–but that continues to operate as an ongoing business during the suspension–may be validly served pursuant to California Code of Civil Procedure § 416.10).

B.     *Eitel* Analysis

As noted above, Goleta's default was entered on October 7, 2011.  *See* Docket No. 13.  After entry of a default, a court may grant a default judgment on the merits of the case.  *See* Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable

4

**United States District Court**
For the Northern District of California

1    neglect, and (7) the strong policy underlying the Federal Rules of Civil
     Procedure favoring decisions on the merits.

2

3    *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered

4    in this case, the general rule is "the factual allegations of the complaint, except those relating to the

5    amount of damages, will be taken as true."  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

6    (9th Cir. 1987).  *But see* Fed. R. Civ. P. 55(b)(2) (providing a court may conduct hearings when, to

7    enter or effectuate a default judgment, it needs to establish the truth of any allegation by evidence).

8           Many of the above factors weigh in favor of default judgment.  For example, if the motion

9    for default judgment were to be denied, then Plaintiffs would likely be left without a remedy.  *See*

10   *Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7

11   (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them

12   without a remedy.  Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v.*

13   *Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default

14   judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  The remedy

15   sought by Plaintiffs is limited to the damages that would be reasonably expected to put Plaintiffs in

16   the same position as they would be had Goleta fulfilled its contractual obligations.  These damages

17   include: (1) unpaid contributions owing to Plaintiffs under the terms of the CBAs and TA; (2)

18   interest that would have accrued on such amounts had they been paid; (3) liquidated damages as set

19   forth and agreed upon by the parties in the CBAs; and (4) attorney's fees and other expenses

20   representing the costs of enforcing Plaintiffs' contractual entitlements.  Compl. at 5:16-27.

21   Therefore, the sum of money at stake is reasonably proportionate to the harm caused to them by

22   Goleta's breach.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW (MEJ), 2006

23   WL 2527776, at *5 (N.D. Cal. Aug. 30, 2006) ("Given the nature of Defendant's conduct in failing

24   to pay the amounts owed, such resulting damages are reasonable and would naturally be expected to

25   flow from Defendants' breach of contract.").  In addition, because Goleta has not filed an answer to

26   the complaint, there is little to suggest a possibility of dispute regarding the material facts.   It is

27   unlikely Goleta's default was due to excusable neglect, as Plaintiffs served not only the summons

28

**United States District Court**
For the Northern District of California

1   and complaint but also the request for entry of default and motion for default judgment on Goleta but

2   still received no response.

3        Most importantly, Plaintiffs have adequately stated a claim for relief. As discussed above,

4   Plaintiffs have provided evidence showing Goleta entered into the CBAs and TA, all of which

5   require Goleta to make contributions to Plaintiffs according to the terms set forth in the agreements.

6   *See* Letter of Assent, Docket No. 25 (Ex. A); 2005-2007 CBA, Docket No. 25 (Ex. B, Art. VI, §

7   6.01(a)); 2010-2013 CBA, Docket No. 26 (Ex. C, Art. VI, § 6.01(a)); TA, Docket No. 26 (Ex. E,

8   Art. III, § 4 at ¶ 1). The TA imposes liability on delinquent employers for liquidated damages,

9   unpaid interest and attorney's fees in addition to the unpaid principal. TA, Docket No. 26 (Ex. E,

10  Art. III). Furthermore, Plaintiffs' complaint alleges that Goleta failed to contribute according to the

11  terms of the agreements from December 2009 through April 2010. Compl. ¶ 10. Accepting all

12  factual allegations as true, the complaint establishes that Plaintiffs violated terms of the agreement.

13  The fact that Goleta is a suspended corporation does not protect it from default judgment. *Grell*, 73

14  Cal. App. 4th at 1306 ("[A] suspended corporation is not protected against a judgment by default

15  upon its failure to answer within time allowed.").

16       Taking into account all of the *Eitel* factors, Plaintiffs are entitled to a default judgment, and

17  the Court now turns to the issue of damages.

18  C.   Damages

19       Because the Court concludes default judgment is warranted, it must determine what damages

20  or other relief is appropriate. Plaintiffs ask the Court to grant the following damages: (1) unpaid

21  principal of $24,289.04 for December 2009 through April 2010; (2) liquidated damages of

22  $2,428.92; (3) unpaid interest of $4,657.19 plus $6.65 per day after January 20, 2012 until judgment

23  is entered; (4) attorney's fees of $2695.00; and (5) out-of-pocket costs of $520.80. Docket No. 17 at

24  4:3-14. Plaintiffs have the burden of "proving up" its damages or the need for other requested relief.

25  *See Board of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-02841 CW, 2005 WL

26  433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through

27  testimony or written affidavit.").

28

**United States District Court**
For the Northern District of California

1     1.     Unpaid Contributions

2          Plaintiffs have met their burden of proof regarding the unpaid contributions of $24,289.04 for

3     December 2009 through April 2010.  Compl. 5:16-20.  Under the TA, contributions are delinquent

4     "if late payment or underpayment occurs because [the employer] (a) fails to submit a contribution

5     report with the full contribution postmarked or received by the due date; or (b) fails to submit

6     contributions on behalf of all [e]mployees for whom contributions are required by the collective

7     bargaining agreement . . . ."  TA, Docket No. 26 (Ex. E, Art. III, § 4 at ¶ 1).  As noted above,

8     Plaintiffs allege that Goleta failed to make any contributions for December 2009 through April 2010.

9     Compl. ¶ 10.  Moreover, according to the declaration of Mr. Chuck Huddleston ("Huddleston"), the

10    Business Manager and Financial Secretary of IBEW Local Union No. 413, Plaintiffs are "authorized

11    [agents] for all entities listed on the [National Electrical Contractors' Association ("NECA")]

12    monthly reports" and "all other entities listed on the monthly reports have assigned their rights to

13    collect delinquent contributions to [Plaintiffs]."  Huddleston Decl. ¶ 12., Docket No. 25. Hence,

14    Plaintiffs collect for all of the following funds: Pension A, Pension B, 401K, Electrical Training

15    Trust ("ETT"), Committee on Political Education ("COPE"), Union Dues, Labor Management

16    Cooperation Committee ("LMCC"), and Administrative Maintenance Fund ("AMF").  *See* NECA

17    monthly reports, Docket 19 (Ex. C).  As listed in the NECA monthly reports, Plaintiffs are also

18    authorized to collect (1) three percent of gross payments made to the National Electrical Benefit

19    Fund ("NEBF"); (2) one percent of gross payments made to the National Electrical Industry Fund

20    ("NEIF"); and (3) NECA chapter dues.  *See* NECA monthly reports, Docket 19 (Ex. C).

21          In *Board of Trs. of the Laborers Health & Welfare Fund for the N. Cal. v. Perez*, No. C 10-

22    2002 JSW (JCS), 2011 WL 6151506 (N.D. Cal. Nov. 7, 2001), plaintiffs filed a motion for default

23    judgment against defendant upon defendant's failure to respond to plaintiffs' ERISA complaint.  *Id.*

24    at *3.  Plaintiffs submitted the following to prove the unpaid principal: (1) reports of contributions

25    for the months defendant failed to pay contributions; and (2) a declaration from plaintiffs' accounts

26    receivable manager attesting to the truth of the records.  *Id.* at *10.  The court found such documents

27    were sufficient proof for plaintiffs' request for delinquent contributions.  *Id.*

28

United States District Court

For the Northern District of California

In the instant case, similar to *Perez*, Plaintiffs provided copies of the four relevant NECA transmittals evidencing the amounts of unpaid principal per month from December 2009 through April 2010, which add up to the sum of $24,289.04: (1) December 2009 for $12,075.58; (2) January 2010 for $4,758.97; (3) February 2010 for $2,147.65; (4) March 2010 for $3,070.78; and (5) April 2010 for $2,236.06. *See* NECA transmittals, Docket 19 (Ex. C). In addition, Plaintiffs submitted a declaration by Ms. Sandy Stephenson ("Stephenson"), an employee of United Administrative Services, which assists in the collection and disbursement of funds for Plaintiffs. Stephenson Decl. ¶ 1, Docket 18. In the declaration, Stephenson attested to the truth of such transmittals. *Id.* Accordingly, the Court awards $24,289.04 in unpaid contributions.

       2.    <u>Liquidated Damages and Unpaid Interest</u>

Plaintiffs have satisfied their burden of proving up the liquidated damages of $2,428.90. Article III, Section 5 of the TA provides for liquidated damages in the amount of ten percent of the total principal owing when a payment is delinquent, or "not received or postmarked by the fifteenth (15th) day of the current month." TA, Docket 26 (Ex. E, Art. III, § 5, ¶ 2). As noted above, Goleta owes Plaintiffs $24,289.40 in delinquent contributions. Applying the TA's procedure in calculating liquidated damages, Goleta is responsible for $2,428.90, or ten percent of the total unpaid principal.

Plaintiffs have also met their burden of proving the unpaid interest of $4,657.19 plus $6.65 per day after January 20, 2012 until judgment is entered. The TA provides for interest on "delinquent contributions, liquidated damages, and other sums owing to [Plaintiffs]" in the amount of ten percent per year, compounded daily." TA, Docket 26 (Ex. E, Art. III, § 6). For instance, the liquidated damages for December 2009 is $1,207.56, or ten percent of $12,075.58 in unpaid principal for that month. *See* NECA transmittals, Docket 19 (Ex. C); Stephenson Decl. ¶ 3, Docket 18. $1,207.56 divided by 365 days is a rate of $3.31 per day. Since December 2009 contributions were due on January 15, 2010, interest began accruing on January 16, 2010. There are 734 days between January 16, 2010 and January 20, 2012, the date on which Plaintiffs submitted these calculations. *See* Stephenson Decl., Docket 18. Therefore, the unpaid interest for the December 2009 unpaid principal is $3.31 multiplied by 734 days, or $2,429.54.

United States District Court

For the Northern District of California

1       Pursuant to the TA's procedure for determining unpaid interest, Plaintiffs accurately

2    provided the following calculations, which add up to the sum of $4,657.19 as of January 20, 2012:

3    (1) $2,429.54 on the December 2009 principal; (2) $913.90 on the January 2010 principal; (3)

4    $398.25 on the February 2010 principal; (4) $540.96 on the March 2010 principal; and (5) $374.54

5    on the April 2010 principal.  Defendant additionally owes the unpaid interest of $6.65 per day after

6    January 20, 2012 until judgment is entered based on the $2,428.90 in liquidated damages from the

7    total unpaid principal of $24,289.04 (*i.e.*, $2,428.90 divided by 365 days is a rate of $6.65 per day).

8       Accordingly, the Court awards $2,428.90 in liquidated damages and interest of $4.657.19

9    plus $6.65 per day after January 20, 2012 until judgment is entered.

10      3.   <u>Attorney's Fees and Costs</u>

11       Finally, Plaintiffs seek reasonable attorney's fees and costs they incurred, totaling to

12    $3,215.80.  Motion for Default Judgment, Docket No. 17 at 4:11-14.  According to Plaintiffs, they

13    incurred (1) attorney's fees of $2,695.00 for June 2011 through December 2011, consisting of 15.40

14    hours of attorney time at $195 per hour; and (2) out-of-pocket costs of $520.80 for the filing fee,

15    service-of-process fee, photocopying and postage.  *See* Case Activity Records, Docket No. 19 (Ex.

16    D).

17       a.   <u>Attorney's Fees</u>

18       In the Ninth Circuit, the starting point for determining reasonable fees is to calculate the

19    "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation

20    by a reasonable hourly rate.  *Perez*, 2011 WL 6151506, at *14 (citing *Jordan v. Multnomah County*,

21    815 F.2d 1258, 1262 (9th Cir. 1987)).  In calculating the lodestar, the Court must determine a

22    reasonable rate and a reasonable number of hours for each attorney.  *Id.* (citing *Chalmers v. City of*

23    *Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).  A reasonable hourly rate is that prevailing in the

24    community for similar work performed by attorneys of comparable skill, experience, and reputation.

25    *Board of Trs. v. Core Concrete Const. Inc.*, No. C 11-02532 LB, 2012 WL 380304, at *6 (N.D. Cal.

26    Jan. 17, 2012) (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)).

27    Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise

28    unnecessary.'" *Core Concrete Trs.*, 2012 WL 380304, at *6 (quoting *McCown v. City of Fontana*,

**United States District Court**

For the Northern District of California

565 F.3d 1097, 1102 (9th Cir. 2009)).  The party requesting fees must provide detailed time records documenting the tasks completed and the time spent.  *Board of Trs. of N. Cal. Sheet Metal v. Efficient Energy Concepts, Inc.*, No. C 11-02626 LB, 2011 WL 7062493, at *7 (N.D. Cal. Dec. 22, 2011).

In the instant case, the attorney's fees sought by Plaintiffs are generally reasonable, both in terms of hours and rate.  In *Geller v. Miller Elec. & Tech., Inc.*, No. C 10-03324 CW (PSG), 2011 WL 7063242 (N.D. Cal. Dec. 30, 2011), a similar ERISA case involving a motion for default judgment, the court found plaintiffs' request for attorney's fees of $3,753.75 for 19.25 hours of attorney time at $195 per hour reasonable.  *Id.* at *2.  Here, like the amount charged in *Geller*, Plaintiffs' attorneys charged $195 per hour for 15.40 hours of attorney time.  Quail Decl., Docket No. 19 at ¶ 7; Case Activity Records, Docket No. 19 (Ex. D).  Moreover, Plaintiffs' attorneys provided a detailed summary of the time expended on tasks such as drafting and filing court documents (e.g., complaint, motion for default judgment), reviewing documents (e.g., court docket and orders, NECA transmittals, Letter of Assent, internal records), and conducting research (e.g., Defendant's corporate and bankruptcy status, Plaintiffs' personnel information).  *See* Case Activity Records, Docket 19 (Ex. D).  Accordingly, the Court awards $2,695.00 in attorney's fees.

> b.    Costs

The Ninth Circuit permits the recovery of out-of-pocket expenses normally charged to a fee-paying client.  *Pension Trust Fund for Operating Eng'rs v. Joco Geospatial Cos., Inc.*, No. C 11-2482 EMC, 2011 WL 6303404, at *6 (N.D. Cal. Dec. 16, 2011) (citing *Trs. Of the Constr. Indus. & Laborers Health & Welfare Trust v. Redlands Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006)).  In *Bonilla v. E.G. Const.*, No. C 05-3151 MMC, 2007 WL 2317589 (N.D. Cal. Aug. 10, 2007), a similar ERISA action involving a motion for default judgment, the court awarded plaintiffs costs for filing, service of process, photocopy fees, and postage.  *Id.* at *9.

Here, like *Bonilla*, Plaintiffs submitted receipts for the following out-of-pocket costs, totaling to $520.80: (1) $350.00 in filing fee; (2) $166.00 in service-of-process fee; (3) $2.40 in photocopy costs; and (4) $2.40 for postage fees.  *See* Case Activity Records, Docket No. 19 (Ex. D at Refs. 79, 80, 94-96, 98).  Accordingly, the Court awards $520.80 in out-of-pocket costs.

**United States District Court**
For the Northern District of California

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for default judgment. Plaintiffs are awarded $24,289.04 in unpaid contributions, $2,428.90 in liquidated damages, $4.657.19 plus $6.65 per day after January 20, 2012 in interest until judgment is entered, $2,695.00 in attorney's fees, and $520.80 in out-of-pocket costs.  The Clerk of the Court is directed to close the file in this case.

This order disposes of Docket Nos. 17 and 23.


IT IS SO ORDERED.


Dated:  February 21, 2012

_____
EDWARD M. CHEN
United States District Judge